[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried before the Regional Family Trial Docket, on a referral from the Danbury Judicial District, January 29th-31st, 2003. The Plaintiff and Defendant testified and numerous exhibits were introduced. The court has considered all of the credible evidence presented to it and carefully considered the respective criteria for orders of custody, visitation and access, child support, health insurance, payment of children's medical expenses, alimony, property settlement, division of debt and award of counsel fees. The court makes the following findings of facts and orders.
The parties were married on August 29, 1987 in Chicago, Illinois. The court finds that it has jurisdiction over the marriage. One of the parties has lived in the State of Connecticut for more than one year prior to bringing this action. The following minor child has been born to the parties since the date of the marriage: Conrad Marcewicz, date of birth 6/6/92, age 10.
No other minor children have been born to the Wife since the date of the marriage. The parties are not receiving state assistance. The court finds that the marriage between the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.
The Wife is 47 years old and in good health. She received her undergraduate degree from the University of Illinois in Chicago. She received her MBA from the University of Connecticut. She has been employed by WorldCom in its Ryebrook, N.Y. office for 19 years. Her current position is Director of International Finance. Mrs. Marcewicz' current salary is $123,292.00.
The Husband is 44 years old and in good health except for some limitation on the use of his arm, due to an injury he claims he sustained at the hands of his Wife. There is a pending lawsuit by the Husband CT Page 2135 against the Wife, as a result of the alleged injuries, in the Judicial District of Danbury bearing docket number CV03-0347739 S. The Husband has an undergraduate degree in mechanical engineering from Lehigh University and an MBA from the University of Connecticut. Mr. Marcewicz' work history can be best described as nonexistent. After graduation from his masters program he worked as a temp for Lipton, Cushman and Wakefield and several other national companies. Although the Husband was offered jobs as a result of some of the temporary assignments, a full-time job never materialized. After the couple's child was born, Mr. Marcewicz left the workforce to become what he described as a "stay-at-home Dad." However, it was undisputed that the couple's child was in daycare for 30 hours a week as an infant enabling Mr. Marcewicz to devote his time and efforts to his company known as G-Force.
When the couple moved to Connecticut, the Husband took care of Conrad for approximately 1 to 1 1/2 years before Conrad entered school full time. Once the child entered school, the Wife got the child ready for school in the morning and he was cared for by the Husband after school.
Although the Husband maintained high hopes for his G-Force business, it has never made a significant amount of money. Mr. Marcewicz testified that the company made $1,500 for 2 weeks work in April 2002 but that appears to be all the income generated by the company that year. The Husband received $10,000 in April 2002 to move out of the family home, $375 a week in alimony and an additional $30,000 advance property distribution when the family home sold in August 2002. Mr. Marcewicz testified that the bulk of the funds were invested in G-Force which paid him $1,500 in 2002, but nothing further as of the date of the trial in 2003. The Husband testified that he had ambitious plans for this company and expected to be marketing products for motocross racecars in 2003. Additionally, the Husband indicated he expected to obtain a part-time job, working 30 hours a weeks, and expected to be paid $20-$25 per hour. The part-time temp work would give the Husband an earning capacity of $30,000 to $37,500 working 30 hours a week. The court finds the Husband's estimations credible and reasonable given his education and has based the financial orders on an earning capacity of $30,000 per year.
The Wife filed for divorce in November 2001 and from that point on the minor child became involved in a horrific parental tug of war. During Thanksgiving weekend 2001, the Husband called the police alleging Mrs. Marcewicz was physically abusing the child using a whiffle-ball bat and a dictionary. No charges were ever filed as a result of this incident.
A second call to the police by the Husband was made because the Wife was unable to operate the television to the satisfaction of CT Page 2136 the child. No arrest was made on this occasion.
As a result of complaints by the Husband to the child's doctor, the family was referred to DCF on two occasions. The allegations of physical abuse were unsubstantiated but both parents were found to have emotionally abused their child.
The Family Relations Counselor, Susan Mylie, and the psychological evaluator, Robert Colen, Ph.D., did not find the Husband's allegations of abuse to be credible. The court does not find the allegations of Mother's abuse to be credible given observations of the court of the parties and the fact that the police, DCF, the Family Relations Counselor and the psychological evaluator did not find the allegations credible. Mrs. Marcewicz testified that while the parties occupied the same home the Husband would remind Conrad he was "safe" because Dad was in the next room or close by. Conrad was also advised by Mr. Marcewicz that if he was not awarded primary custody by the court, Mr. Marcewicz would move to Las Vegas or southern California. This statement clearly traumatized the child and influenced Conrad's statements to his Father regarding the actions of the Mother and with whom the child preferred to live with.
The Mother has problems with her parenting Conrad as well. When asked what activities she participates in with her son she rattled off that she was on the board of directors of the Discovery Center and Boy Scouts. What was telling about this answer was the fact that Conrad is not present or interacting with his mother during these activities; they were simply positions in the community that might add to her social standing but are of little benefit to developing a good mother/son relationship. Mrs. Marcewicz had difficulty describing activities that she and her son enjoy doing together other than reading. Reading together is certainly commendable but should not be the only bond mother and son share. It is the court's hope that once the intense scrutiny and disapproval of the Father is removed from Mother, she, with the assistance of her therapist, will have the opportunity to repair her relationship with her son to the benefit of both.
The Plaintiff and Defendant have very different personalities and parenting styles. While the family was intact those styles somewhat balanced themselves out for the benefit of Conrad. Mrs. Marcewicz is a hard-driving, energetic, goal-oriented, career woman. Mr. Marcewicz is unfocused on his career and over-focused on his son to the exclusion of everything else. However, the court agrees with the assessment made by the Family Relations Counselor and Dr. Colen that Mr. Marcewicz is enmeshed with his son in a way that is psychologically unhealthy and is impeding Conrad's normal growth and development. This finding in no way CT Page 2137 implies that Father and son do not have a close bond or that the child would not be psychologically devastated if his Father relocated out of the state of Connecticut. It is clear to the court that Conrad needs contact with, and the love and affection of, both of his parents.
The court has concluded that the Mother should be the primary residential parent for a number of reasons. She allows and encourages Conrad to exert his independence and to socialize with children his own age. Mr. Marcewicz has encouraged the child to call him on his cell phone numerous times a day to the extent that the child was unable to walk a block up the street alone. The Father and son are both experiencing panic attacks. The court finds that the Mother maintains more appropriate parent/child boundaries. The Father has unwittingly made Conrad a co-conspirator in his quest for custody and has given him details about the divorce and his plans to move that are age inappropriate for a 10 year old. This information has clearly added to the divorce stress Conrad is already experiencing.
Finally, it was clear to the court during his testimony that Mr. Marcewicz has a great deal of difficulty focusing and making decisions. During the trial, the court asked Mr. Marcewicz a series of relatively simple yes or no questions and, although he tried, Mr. Marcewicz was unable to respond in an appropriate fashion. Effective parenting requires fast and flexible thinking and decision making, qualities the Father does not possess at the present.
Conrad will benefit from having contact with both his parents. The court is ordering both parents to remain in therapy with their present therapists, so they have the opportunity to address their respective parenting deficiencies and remedy them, until their therapists dismiss them.
 ORDERS
After considering all of the statutory criteria set forth in General Statutes § 46b-84 as to support of a minor child, § 46b-215a-1 et seq., Regs. Conn. State Agencies, as to child support, § 46b-62 as to counsel fees, § 46b-66a, as to conveyance of real property, §46b-81, as to assignment of property and transfer of title, § 46b-82, as to the award of alimony, § 46b-84, as to medical insurance for minor child, together with applicable case law and the evidence presented here, the court hereby enters the following orders:
1. DISSOLUTION OF MARRIAGE
CT Page 2138
A decree dissolving the marriage on the grounds of irretrievable breakdown shall enter on February 11, 2003.
2. HUSBAND'S BUSINESS
The Husband shall retain his business, known as G-Force, Inc. free and clear of any claims by the Wife. The Husband shall hold the Wife harmless and indemnified from all debts and liabilities of the corporation.
3. CUSTODY
The parties shall share joint legal custody of the minor child as to the matters listed below. The child's primary residence shall be with the mother, and she shall be responsible for making routine decisions regarding the child's maintenance and daily care and all other decisions not listed below.
The parties shall jointly discuss only the following matters in an attempt to arrive at a harmonious policy intending to promote the child's best interests:
 EDUCATION: the child's education, limited specifically to decisions to enroll the child in a private school, the selection of a private school, if any, and sharing the cost of tuition at a private school;
 HEALTH CARE: the child's medical and dental care, specifically relating to the choice of care providers (including therapists and counselors), the availability of insurance coverage, and the avoidance of duplicative examinations and treatment;
VACATIONS: the child's vacation activities and schedule;
DAYCARE PROVIDER: any change in the child's regular day care provider;
 OVERNIGHT TRIPS: the child's participation in school-sponsored overnight trips; and
 EXTRACURRICULAR RELIGIOUS ACTIVITIES: the enrollment of the child in any religious, recreational or sporting activities requiring regular meetings, practices, games, etc., which may involve the child during times when the child is expected to be with the other parent, with a view to arriving at a harmonious and flexible policy calculated to promote the pleasure and best interests of the child.
FINAL DECISION MAKING: In the event that the parties are unable to CT Page 2139 reach a mutual decision regarding any of the foregoing issues after discussion has been had, then the Plaintiff Mother shall make the final decision pertaining to such issue.
As long as the Defendant Father resides within a 20-mile radius of Ridgefield, Connecticut, the residence of the minor child shall not be removed from the State of Connecticut without 90 days advance notice of the date of departure and written notification of the proposed new address, of the residence, by the Plaintiff Mother to the Defendant Father.
Neither party shall change his or her residence without 90 days advance written notice of the date of departure and notification of the proposed new residence and its street address and telephone number(s) to the other parent.
4. PARENTAL ACCESS
All communication regarding parental access shall be in writing, either by e-mail, FAX or hard copy unless it is an emergency, in which case the telephone or fastest available method of communication shall be utilized.
I. If the Defendant Father resides within a 20-mile radius or a 45-minute commute by automobile from the Plaintiff Mother:
If the Defendant Father resides within a 20-mile radius or a 45-minute commute by automobile from the Plaintiff Mother, he shall enjoy the following contact with the minor child:
 SCHOOL YEAR: Alternate weekends, extending from the end of the child's school day on Friday until return to school on Monday, except for weekends with a Federal Monday holiday, in which case visitation shall extend until return to school on Tuesday. The Defendant Father shall pick up the child directly from school or the child will ride the bus to the Defendant, Father's home.
 One afternoon each week, which, absent agreement otherwise by the parties, shall be Tuesday from the end of school until 8:00 p.m. The Defendant Father shall pick up the child directly from school and return him to the Plaintiff Mother's home. In the event the Defendant Father is unable to visit with the child on a particular evening, he shall give as much notice to the Plaintiff Mother as possible so as to avoid disappointing the child and to allow the Plaintiff Mother to make alternate arrangements for his care. No make-up visitation time will be CT Page 2140 scheduled for missed visits.
 SUMMER: Alternate weekends, extending from the end of day camp or 6:00 p.m. (if in other day care) on Friday until return to day camp (or 9:00 a.m. if in other day care) on Monday. The Defendant Father shall pick up and return the child from and to camp or day care directly.
 Each party shall enjoy two weeks uninterrupted vacation with the child, which weeks shall not be consecutive, taken between the beginning of the first full week following the end of school and completed by the beginning of the last full week prior to the start of school. Each such week shall begin at 9:00 a.m. on the Monday morning, following the other parent's weekend with the child, and continue until 9:00 a.m. on the Monday morning following. The ordinary weekend and week night visitation time shall be included in the vacation time, and no additional or make-up visitation will be provided. The Defendant Father will give written notice of the two weeks he elects by April 1st, and the Plaintiff Mother will give written notice of the two weeks she elects by May 1st.
 SCHOOL BREAKS: The child's Christmas school vacation shall be divided between the parties. In odd numbered years the child shall spend the first half of the vacation from 5:00 p.m. on the last day of school until 1:00 p.m. on December 25th with the Defendant Father, and the balance with the Plaintiff Mother. In even numbered years, the child shall spend the first half of the vacation from the close of school until 1:00 p.m. on December 25th with the Plaintiff Mother, and thereafter until 8:00 p.m. with the Defendant Father the day before school resumes.
 The spring school vacation (or the longer break, if there should be two) shall be alternated between the parties, with the Defendant Father having even numbered years, and the Plaintiff Mother having odd numbered years.
 If there should also be a shorter vacation (for example, a four-day President's Day break), the child shall spend that shorter vacation with the Defendant Father in odd numbered years, and the Plaintiff Mother in even numbered years.
 The Thanksgiving Break shall be alternated between the parties, with the child spending Wednesday from pick up from school through Sunday at 8:00 p.m. with the Defendant Father in even numbered years, and with the Plaintiff Mother in odd numbered years.
CT Page 2141
 HOLIDAYS: Until the child turns 13, the parties shall alternate Halloween from the close of school until 8:30 p.m., with the Defendant Father having odd years and the Plaintiff Mother even years.
 Easter and Good Friday, if they do not fall within the school Spring Break, shall be spent with the parent with whom the child is spending the weekend.
 Mother's Day shall always be spent with the Mother; Father's Day shall always be spent with the Father.
If the Plaintiff Mother plans to hire a babysitter for a period of three hours or more, during the child's waking hours other than when the child is with a regular day care provider, or if the Plaintiff Mother is required to be away from home over night on business, the Defendant Father shall have the right of first refusal to care for the child, which shall be in addition to ordinary weekend and week night visitation time. There shall be no additional or make-up time if the travel overlaps with the usual contact schedule.
II. If the Defendant Father does not live within a 20-mile radius or a 45-minute commute by automobile from the Plaintiff Mother:
If the Defendant Father does not reside within a 20-mile radius or a 45-minute commute by trip automobile from the Plaintiff Mother, he shall enjoy the following contact with the Minor Child:
 SCHOOL YEAR: One weekend each month in Connecticut (or wherever the child happens to reside). If there is a Monday school holiday, the Defendant Father shall visit on that weekend, unless the parties agree otherwise, or the holiday falls within time specifically assigned to the Plaintiff Mother herein. The contact shall extend from 5:00 p.m. Friday until 5:00 p.m. Monday, unless there is no Monday holiday, in which case the visit will extend from 5:00 p.m. Friday until 8:00 p.m. Sunday. Unless the parties agree otherwise, where there is no weekend with a Monday school holiday, the Defendant Father shall visit on the second full weekend of each month;
 The Defendant Father shall have additional time in Connecticut (or wherever the child happens to reside), including overnight(s), with a minimum of one week's notice by the Defendant Father, (except during the vacation and holiday periods specifically assigned to the Plaintiff Mother herein), and provided that such visits shall not result in the child's absence from school. The Defendant Father shall have a maximum of 2 weekend visits every 4 weeks;
CT Page 2142
 SCHOOL BREAKS: The child's Christmas school vacation shall be split between the parties. In odd numbered years, the Defendant Father's contact shall begin at 6:00 p.m. on Christmas Eve and continue until 6:00 p.m. on New Year's Day; and in even numbered years, beginning at 6:00 p.m. on December 26 and continuing until 6:00 p.m. on New Year's Day;
 The spring school vacation (or the longer break, if there should be two) shall be spent with the Defendant Father;
 If there should also be a shorter winter/spring vacation (for example, a four-day President's Day break), the child shall spend that shorter vacation with the Plaintiff Mother.
 The Thanksgiving school holiday shall alternate between the parties, beginning at school dismissal on Wednesday and continuing until 8:00 p.m. on the following Sunday, with the Plaintiff Mother having odd numbered years and the Defendant Father having even numbered years. If any visitation period is 96 hours or less, the Defendant Father shall visit with the child in Connecticut (or wherever the child happens to reside), and the child will not travel by air.
 SUMMER: The Defendant Father shall spend four consecutive weeks with the Minor Child during the child's school summer vacation, to begin no sooner than one full week following the end of school and to be completed no later than one full week prior to the resumption of school. The Defendant Father shall give written notice of the four weeks he selects no later than April 1 of each year.
 Until he is 15 years old, the Minor Child shall not travel by air between the parents' homes unless accompanied by a parent, or other adult relative known to the child, or arrangements are made with the airline for the Minor Child to travel on a direct (non-stop) flight as an "unaccompanied minor." The parent making the arrangements and purchasing tickets for the Minor Child's travel shall notify the other parent of the child's detailed travel plans, in writing, at least two weeks in advance of each trip.
 So long as either party's child support obligation continues, the parties shall equally share the cost of the child's round-trip airline tickets. The parties shall cooperate so as to be able to purchase the tickets at least one month in advance of the travel date(s). The Plaintiff Mother shall purchase the tickets in odd-numbered years, and the Defendant Father shall purchase the tickets in even-numbered CT Page 2143 years. Each party shall reimburse the other one-half the cost of the child's ticket within 30 days of receipt of a copy of the ticket receipt.
5. CHILD-RELATED MISCELLANEOUS PROVISIONS
Neither parent shall schedule activities for the child, during time the child is scheduled to be with the other parent, without the advance written agreement of the other parent. If both parties agree in writing in advance, either party may enroll the child in extracurricular activities which have occasional practices, events or games scheduled on weekends or on the week nights the child spends with the other parent, and the other parent shall accommodate the child's attendance. If the parties fail to agree after discussion, the Plaintiff Mother may enroll the child in extracurricular activities which have occasional practices, events or games scheduled on weekends or on the week nights the child spends with the Father, and the Defendant Father shall accommodate the child's attendance.
Both parents may attend sporting events, school activities, scout meetings, etc., in which the child is involved, notwithstanding the visitation schedule, provided other parent is also in attendance.
Both parents may volunteer to assist with the child's activities as coach, scout leader, room mother, chaperon, etc. The Defendant Father shall be presumed to be the more appropriate parent to participate in Scouts and to coach the minor child's sports teams if both parties wish to volunteer. Each party will keep the other informed of the whereabouts, including a telephone number, of the minor child if the minor child will not be sleeping in the residence of the parent for two or more nights. Either parent may take the child out of state overnight on holidays or for vacations or visitation, so long as notice of the address and telephone number of the destination is provided to the other parent two weeks in advance of the departure.
Each of the parents agrees that if either has any knowledge of any illness or accident seriously affecting the health or welfare of the child (defined as requiring the services of a physician), the Father or the Mother, as the case may be, shall promptly notify the other. No notice will be necessary of routine medical or dental appointments, nor shall the Defendant Father be entitled to be present for such appointments. Except in the case of emergencies, the Defendant Father shall not seek the services of a physician, mental health professional or dentist for the minor child. The Defendant Father shall not discharge a physician, dentist or mental health professional treating the child. CT Page 2144
Each parent shall permit the minor child to telephone the other parent once each day at will and permit the other parent to telephone the minor child once each day for ten minutes or less between the hours of 7:00 and 8:00 a.m. or 5:00 and 7:00 p.m.
Each parent shall employ E-mail, an answering machine, cell phone, fax machine or beeper at all times and shall promptly respond to inquiries and messages left by the other parent. The child shall not be used to convey checks or messages, verbal or written, between the parents.
Each party shall promptly provide the other with all relevant home and work telephone numbers as they may change. Neither party shall call the other at work except in the case of an emergency. In order that the situation not be exacerbated, both parties shall deal with one another in writing to the extent possible, and shall refrain from interposing any third parties in the communication.
Neither parent shall do or say anything, nor allow a third party to do or say anything to, or in the presence of, the minor child which would tend to detract from the ordinary respect, love and affection of the minor child for the other parent. Each parent shall observe the usual social courtesies with the other in front of the child.
The Defendant Father shall have the right of access to all academic, medical, hospital or other health records of the minor child.
If the Minor Child is in counseling with a mental health professional, each parent shall encourage and support the child to attend counseling sessions, cooperate as requested by the counselor, and shall not call the counselor as a witness or subpoena the counselor's records for any subsequent proceeding between the parents.
The parent who has parental access to the minor child on the date of the mental health professional's appointment shall take the child to the appointment. The Plaintiff, Mother shall make a good faith effort to schedule approximately 1/2 the appointments on a Tuesday so the Defendant Father can take the minor child to 50% of the appointments. The child shall not miss a weekly appointment merely because it cannot be scheduled to enable the Defendant Father to take the child precisely to every other appointment.
Each parent shall keep the other parent informed of the child's school, sports and extracurricular activities and provide the other parent with advance notice of special events to which parents and/or the CT Page 2145 public are invited and shall provide the other parent with "parent tickets" if distributed or made available for the special event. If E-mail addresses, street addresses or telephone numbers are requested of either parent in regard to the child's activities, both parents' complete information shall be provided. The Plaintiff Mother shall provide the child's school with the Defendant Father's contact information and it shall be the responsibility of the Defendant Father to provide the Plaintiff Mother with updated information.
If the child participates in any activities intended to include a specific parent (e.g., father/son camp-outs, mother/son dinners), that parent shall be entitled to attend the event with the child, which shall not be considered additional visitation, and permission to attend the event shall not be withheld by the other parent.
Each parent shall join the PTA or equivalent organization at the child's school in order to receive relevant information. The Defendant Father shall provide the child's teacher with stamped self-addressed envelopes so that he may receive school information on a timely basis directly from the teacher.
Each parent is expected to adapt to the changing needs and interests of the minor child, and to arrange his or her schedule to accommodate the minor child's birthday party invitations, play dates, etc., remembering that such activities are an ordinary part of the child's development and that the child will enjoy those activities and benefit from them.
Each parent shall ensure that all of the minor child's clothing, toys and equipment are returned with the child to the parent who purchased the items so that the minor child may use and enjoy them while with that parent.
Both parents are cautioned that the high degree of animosity between them is detrimental to the child and that the court is ordering them to engage in ongoing co-parenting counseling to assist each of them in resolving disagreements that may arise in the future.
6. COPARENTING THERAPY
The parties shall seek the assistance of the PEACE Program, established by Beacon Behavioral Services LLC, Avon, CT; Kids First, established by Hiebel and Roeder, Family and Child Associates in Middletown, CT; The PACT Program (Parnets Allied CoParenting Together) facilitated by Dr. Lauren Behrman, Ph.D., in New Rochelle, NY; or the Connecticut Resource Group of Waterbury, CT (or a similar program) to facilitate the parents' CT Page 2146 attempts to peacefully confer with the other on all important matters pertaining to the child's health, education, welfare and upbringing. The parties shall equally share the costs associated with the PEACE Program, Kids First, Connecticut Resource Group, PACT Program or similar program. The Attorney for the Minor Child shall confer with both parents and contact the program to make the initial appointment for the parties. Thereafter, the parties shall be responsible for scheduling weekly appointments in compliance with the program requirements. If the parties are unable to establish parental communication with the assistance of one of the above programs, either parent fails to attend or pay his/her 50% share of the costs associated with the program, or the parties cannot arrive at an agreement regarding any decisions involving the health, education or welfare of the minor children, the Plaintiff Mother shall make the final decision. Plaintiff Mother shall be required to make a good faith effort in attending, participating in and paying her 50% share of the program before she has the right to make any final decision.
7. CHILD SUPPORT
The court has computed the Child Support Guidelines based on the Husband's earning capacity of $30,000 gross income and $23,868 net income per year. Pursuant to the Child Support Guidelines, the Husband shall pay the Wife, by contingent wage execution, the sum of $74.00 per week as child support and a $20.00 per week contribution towards the child's preschool tuition, for a total weekly payment of $94.00. The first payment shall be due 1 week from the date of the decision and shall continue on a weekly basis. All child support checks shall be mailed by the Husband to the Wife via U.S. Mail and shall not be delivered by the minor child or placed in the Wife's mailbox by anyone other than a U.S. Postal Carrier. The Husband shall immediately notify (defined as within 2 weeks) the Wife in writing if he obtains employment paying him in excess of $30,000.00 gross income per year, including income from his business G-Force or any other source, including an inheritance.
The parties shall exchange signed copies of their federal income tax returns (along with a copy of all forms W-2, 1099 and the like) each year by April 15th for as long as the child remains under the age of 18 years.
The obligations of support and maintenance of the minor child shall terminate when the child attains the age of eighteen (18) years, marries, dies, becomes employed full time being no longer enrolled in high school, or becomes otherwise emancipated, whichever occurs first. However, if the child reaches the age of eighteen (18) years, and continues as a full-time high school student and resides with the Wife, CT Page 2147 the Husband shall continue to pay child support as specified above, until the child completes the twelfth (12) grade or attains the age of nineteen (19) years, whichever occurs first.
8. INCOME TAX EXEMPTION
The Wife shall take the child as a dependent for income tax purposes until the Husband has earned income exceeding $45,000 per year. When the Husband is earning in excess of $45,000, and he is current in all child support and medical expense reimbursements, he shall be entitled to take the dependency exemption in even-numbered years and the Wife shall take the exemption in odd-numbered years.
9. ALIMONY
The Wife shall pay the Husband alimony in the amount of $250.00 per week for a maximum period of five (5) years from the date of the dissolution; it shall be modifiable as to term and amount. Alimony shall terminate sooner if the Husband dies, remarries, or cohabitates as defined by statute. This sum shall be paid by a wage execution.
The Husband shall pay the Wife the sum of $1.00 a year alimony for a period of five (5) years from the date of the dissolution. Alimony shall be modifiable as to term and amount. Alimony shall terminate sooner if the Wife dies, remarries, or cohabitates as defined by statute.
10. PROCEEDS FROM SALE OF MARITAL RESIDENCE
The parties previously owned the former marital residence located at 225 Peaceable Street, Ridgefield, Connecticut. The marital home has been sold and the net proceeds from the sale are being held in escrow by the closing attorney. The following distributions shall be made from sums being held by the closing attorney: a) the sum of $5,000.00 shall be payable to the Plaintiff to reimburse her for 1/2 the advance that she made to the Defendant by way of lump-sum alimony, pendente lite; b) reimbursement to the Plaintiff Wife for the storage and moving expenses she incurred for the Husband's personal property in the amount of $1,700.00; c) payment shall be made for the liabilities listed on the Wife's financial affidavit incurred jointly by the parties; d) the sum of $50,000.00 should be used to fund an Educational Support Order by agreement of the parties.; and e) Attorney Dornfeld's fees shall be deducted from the proceeds from the sale of the former marital residence. The remaining net proceeds from the sale of the home shall be divided equally between the parties. CT Page 2148
11. RETIREMENT ACCOUNTS
The Plaintiff shall retain fifty (50%) percent of her retirement accounts and the remaining fifty (50%) percent shall be distributed to the Defendant by way of a Qualified Domestic Relations Order. The cost of the preparation of the QDRO shall be shared equally by the parties.
12. EDUCATIONAL SUPPORT ORDER
As stated above, the sum of $50,000.00 shall be deducted from the proceeds from the sale of the marital residence and deposited into an interest-bearing account managed by the Plaintiff and Attorney for the Minor Child as co-Trustees. The Plaintiff shall provide the Defendant with a semi-annual accounting of all sums so deposited. Said funds shall be used to pay the costs of four (4) years of undergraduate college education leading to a bachelor's degree for the parties' minor child under the following terms and conditions: a) college education costs shall be defined as room and board, tuition, books, registration, laboratory, and special fees; b) the parties shall cooperate with one another in providing any information or data required in connection with the application for scholarships; c) while each of the parties' obligation to pay the costs of a college education is limited to four (4) school years, the child shall be entitled to a total of (5) years from matriculation in which to attain his bachelor's degree, provided, however, that each of the parties' financial obligation shall not be enlarged beyond the costs had the child completed his education in four (4) school years; d) this obligation will not continue past the minor child's twenty-third (23rd) birthday; e) the extent of each party's obligation shall not exceed the cost of tuition, room and board, books, registration, laboratory and special fees for an in-state resident student attending the University of Connecticut at Storrs for the same time period; and f) the parties' obligation for the post high school education of the minor child shall be limited to the funds which currently exist and which the parties have designated for this purpose. Neither party shall be under any obligation to make additional contributions to the post high school education of the child.
13. ATTORNEYS FEES
The Plaintiff shall be solely responsible for her attorneys fees. The Plaintiff and Defendant shall be equally responsible for the payment of Attorney Sharon W. Dornfeld, Counsel for the Minor Child. Attorney Dornfeld's fees shall be deducted from the proceeds from the sale of the former marital residence. Any further fees for Attorney Dornfeld, relating to these orders, shall be split equally between the parties. CT Page 2149
14. MEDICAL INSURANCE — HUSBAND
The Wife shall pay 75% of the costs of COBRA medical insurance coverage from her employer for the Husband until the first to occur: the Husband having medical insurance available through his employer or the expiration of the COBRA period. The Husband shall pay the other 25% of the cost of his COBRA benefits. The Husband's payments to the Wife for his share of the COBRA benefits shall be due on the 1st day of the month commencing March 1st, 2003. If the Husband's payments are more than 10 days late for 3 months in any 6-month period, the Wife's obligation to contribute 75% of the cost shall automatically terminate and the Husband shall be solely responsible for 100% of the cost of his COBRA insurance.
15. MEDICAL INSURANCE AND UNREIMBURSED MEDICALS — CHILD
The Wife shall maintain, at her sole expense, the present medical/dental insurance for the child, which is provided to the Wife through her employment. If said insurance is no longer available to the Wife through her employment at a reasonable cost, the parties shall share the cost of obtaining such medical and dental insurance pursuant to the allocation by the then current Child Support Guidelines. The Wife shall be responsible for the first $100.00 per year of unreimbursed medical and dental expenses (including orthodontics). Thereafter, the parties shall split the cost of any unreimbursed medical, dental, optical, psychological, orthodontic and prescriptive drug expenses incurred on behalf of the minor child, with the Wife paying 82% and the Husband paying 18%. The parties shall share the cost of unreimbursed medical expenses for as long as the Husband is obligated to pay child support for said child.
The provisions of 46b-84 (e) shall apply.
16. LIFE INSURANCE
The Wife shall continue to maintain her existing policies of life insurance naming the minor child as the beneficiary until the child has reached the age of majority.
The Wife shall provide the Husband proof of said insurance on an annual basis upon his request in writing.
17. MOTOR VEHICLES
The Wife shall be entitled to sole ownership of the 1999 Volkswagon CT Page 2150 Passat and the 1988 Mercedes 5605L. The Wife shall hold the Husband indemnified and harmless from the taxes, registration and insurance for said vehicles.
The Husband shall be entitled to sole ownership of the 1998 BMW M3 and 1972 Lotus Europa listed on his Financial Affidavit. The Husband shall hold the Wife indemnified and harmless from the taxes, registration and insurance for said vehicles. The parties shall immediately complete and sign any paperwork necessary to change title and registration on the above vehicles.
18. BANK ACCOUNTS
The Husband and Wife shall each keep as their sole property the bank accounts listed on their respective financial affidavits.
19. DIVISION OF DEBTS
Except as otherwise provided herein, the Husband shall be responsible for the debts on his financial affidavit and the Wife shall be responsible for the debts on her financial affidavit.
20. RESTORATION OF MAIDEN NAME
The Wife's maiden name, Irene C. Terem, shall be restored.
21. INTERIM POSTJUDGMENT ORDERS
These orders shall be considered interim postjudgment orders in the event of an appeal by either party.
22. JURISDICTION
The Regional Family Trial Docket shall retain jurisdiction over this case for a period of one year from the date of judgment; any motions regarding custody and/or visitation shall be filed with the Regional Family Trial Docket.
Holly Abery-Wetstone, Presiding Judge CT Page 2151